289 S.E.2d 742

### STATE of West Virginia

v.

### Joseph Milen OCHELTREE.

### No. 15113.

Supreme Court of Appeals of West Virginia.

March 30, 1982.

David M. Finnerin, Parkersburg, for appellant.

Harry G. Deitzler, Pros. Atty., Parkersburg, for appellee.

McHUGH, Justice:

The appellant, Joseph Milen Ocheltree, was convicted of the crime of burglary by breaking and entering. The case is before this Court on an appeal from a final order of the Circuit Court of Wood County, entered on July 3, 1980, denying the defendant's motion to set aside the verdict and award him a new trial. That order also sentenced the defendant to a term of one to 15 years at the West Virginia State Penitentiary at Moundsville.

The defendant, Joseph Milen Ocheltree, was convicted after a jury trial of burglary by breaking and entering. On this appeal he assigns three errors: (1) the trial court's refusal to give a jury instruction on criminal trespass as a lesser included offense of burglary by breaking and entering; (2) the evidence at trial was not sufficient to show the requisite intent for burglary by breaking and entering; and (3) he was denied a fair trial because of comments made by the prosecutor in his closing argument.

I

At his trial the defendant requested that the following instruction be given to the jury:

One of the offenses included within the charge contained in the indictment is trespass.

Trespass is committed when any person knowingly enters in, upon, or under a structure ... without being authorized ... [to do so].

The burden is on the State to prove the guilt of the Defendant beyond a reasonable doubt and the Defendant, JOSEPH OCHELTREE, is not required to prove himself innocent. He is presumed by the law to be innocent of this charge and this presumption remains throughout the entire trial.

Before JOSEPH OCHELTREE can be convicted of trespass, the State of West Virginia must overcome the presumption of innocence and prove to the satisfaction of the jury beyond a reasonable doubt that: 1. The Defendant, JOSEPH OCHELTREE, 2. In Wood County, West Virginia, 3. On or about the 18th day of February, 1980, 4. Did knowingly enter in and upon the dwelling house of Carolyn Eliot, 5. Without being authorized to do so, and 6. Without any intent to commit larceny therein.

If after impartially considering, weighing and comparing all of the evidence, both that of the State and that of the Defendant, the jury and each member of the jury is convinced beyond a reasonable doubt of the truth of the charge as to each of these elements of trespass, you may find JOSEPH OCHELTREE guilty of trespass. If the jury and each member of the jury has a reasonable doubt of the truth of the charge as to any one or more of these elements of trespass, you shall find JOSEPH OCHELTREE not guilty of trespass.

The State objected to this instruction as being contrary to the law and the trial judge refused to give it to the jury. The defendant assigns that refusal as error.

The defendant argues that criminal trespass is a lesser included offense of burglary by breaking and entering. The State, on the other hand, argues that criminal trespass is not a lesser included offense of burglary by breaking and entering and that, even if it is a lesser included offense, the evidence at trial did not support the instruction.

■ On the issue of what constitutes a lesser included offense of a crime charged, we recently said:

'The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense.' *Cook v. State*, 258 Ind. 667, 671–72, 284 N.E.2d 81, 84 (1972).... We summarized this test in syllabus point 7 of *State v. Bailey*, 159 W.Va. 167, 220 S.E.2d 432, (1975) where we said: 'An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.

*State v. Daggett,* 167 W.Va. 411, 280 S.E.2d 545, 557 (1981).[1] The Supreme Judicial Court of Maine explained the test of what is a lesser included offense in *State v. Luce,* 394 A.2d 770 (Me.1978):

> The legal definition of the crime ... is the exclusive measure of whether the greater offense includes the lesser. (Citations omitted.) Although an indictment, as in this instance, charges elements of the lesser offense not included within the method of the greater crime *as defined* and thereby fully sets forth all the essential elements of the lesser crime *as defined,* the lesser offense is not an *included* offense. One must look to the legal definition of the greater offense and find *all* the essential elements of the lesser offense before correctly concluding that the lesser offense is *necessarily included.*

394 A.2d at 774 (Emphasis in the original).[2]

*W.Va.Code,* 61–3–11(a) [1973], provides: "If any person shall ... in the daytime, break and enter, the dwelling house ... of another, with intent to commit a felony or any larceny therein, he shall be deemed guilty of burglary." *W.Va.Code,* 61–3B–2 [1978], provides: "Any person who knowingly enters in, upon or under a structure or conveyance without being authorized, licensed or invited ... shall be guilty of a misdemeanor...."

The elements necessary to prove burglary under *W.Va.Code,* 61–3–11(a) [1973], therefore, are: (1) in the daytime, (2) breaking and entering, (3) the dwelling house of another, (4) with the intent to commit a felony or any larceny therein. The elements necessary to the proof of criminal trespass under *W.Va.Code,* 61–3B–2 [1978], are: (1) a knowing entry, (2) in a structure or conveyance, (3) without being authorized, licensed or invited.

The West Virginia burglary and trespass statutes are similar to Pennsylvania's burglary and trespass statutes.[3] In this jurisdiction, as in Pennsylvania, "the crime of criminal trespass has a scienter requirement not necessary to prove the crime of burglary, and thus cannot be categorized as a lesser included offense." *Commonwealth v. Carter,* 482 Pa. 274, 393 A.2d 660 (1978). To prove the crime of trespass, under *W.Va.Code,* 61–3B–2 [1978], the State must show that the entry was knowingly made. There is not a similar requirement under *W.Va.Code,* 61–3–11(a) [1973]. Also, in order to prove trespass in this jurisdiction the State must show that the entry was without authorization, license or invitation. Again, there is no similar requirement under *W.Va.Code,* 61–3–11(a) [1973]. Hence, trespass requires the inclusion of elements not required in the offense of burglary by breaking and entering.[4] Criminal trespass, as defined by *W.Va. Code,* 61–3B–2 [1978], therefore, is not a lesser included offense of burglary by breaking and entering as defined by *W.Va. Code,* 61–3–11(a) [1973]. Because criminal trespass is not a lesser included offense of the crime charged, it is not error for a trial

1. The Indiana case, *Cook v. State,* quoted in *Daggett,* involved the question of whether trespass was a lesser included offense of second degree burglary. The Indiana Supreme Court held that it was not.

2. In *Luce* the Supreme Judicial Court of Maine also concluded that trespass was not a lesser included offense of burglary under that state's definitions of those crimes.

3. 18 *Pa.Cons.Stat.Ann.* § 3502(a) (Purdon) provides: "A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 *Pa.Cons.Stat.Ann.* § 3503(a) (Purdon) provides:

"A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or gains entrance by subterfuge or surreptitiously remains in any building or occupied structure, or separately secured or occupied portion thereof."

4. *See Estep v. State,* 394 N.E.2d 111, 113 (Ind. 1979):

Although the entry incidental to a burglary may be a trespass ... it does not follow, that it must be. One may never have been denied entry to his neighbor's house, he may even have been expressly authorized to enter it at any time. Yet, if he enters by 'breaking,' as that term has been employed in defining burglary, with the intent to commit a felony therein, he commits a burglary—although not a trespass, because the entry was authorized.

judge to refuse an instruction which would allow a jury to convict a defendant charged with burglary by breaking and entering of criminal trespass. *See, e.g., State v. Rupe*, 226 Kan. 474, 601 P.2d 675 (1979); *State v. Neighbors*, 613 S.W.2d 143 (Mo.App.1980). "If trespass is not an included offense of burglary ... then appellant was not entitled to an instruction to that effect which would have given the jury the opportunity to convict him of that crime." *Goodpaster v. State*, 402 N.E.2d 1239, 1242 (Ind.1980).

■ The West Virginia criminal trespass statute changes the common law of trespass. It attaches criminal liability to certain acts which may not have constituted the crime of trespass under the common law. For example, "mere trespass upon real or personal property, which is also the subject of a civil action, is not always a crime at common law; but it is a crime at common law if it amounts to a breach of the peace, or if it tends to or threatens a breach of the peace." *Miller v. Harless*, 153 Va. 228, 244, 149 S.E. 619, 624 (1929).

> While certain acts of trespass were regarded as crimes at common law, the distinction between trespasses for which there was a private remedy only and to those for which there might be a public prosecution was not laid down with much accuracy or precision. It does seem clear, however, that although every trespass which is a disturbance of the peace is indictable, every trespass which is the subject of a civil action is not an indictable offense. To constitute the offense of criminal trespass, intentional acts must be used, or a wilful demonstration of force calculated to intimidate or alarm, or acts involving or tending to a breach of the peace. A mere invasion of private property without a disturbance of the peace is not a crime.

75 Am.Jur.2d *Trespass* § 86 (1974). *W.Va. Code*, 61–3B–3 [1978], does not carry forward the common law requirement that a criminal trespass must constitute a breach of the peace. That section also provides, in its second paragraph, for an enhanced penalty where the person who commits the trespass is armed with a firearm or dangerous weapon and intends to do bodily injury to a person in the structure or conveyance at the time the trespass occurs.

Based upon all of the above, we do not believe that the intent of the West Virginia Legislature was to make criminal trespass a lesser included offense of burglary by breaking and entering.

## II

The defendant argues that there was not sufficient evidence at his trial to support an inference by the jury that he intended to commit a felony or any larceny in the dwelling house. The State argues that such an inference is supported by the evidence.

■ The intent to commit a felony or any larceny is an essential element of the crime of burglary under *W.Va.Code*, 61–3–11(a) [1973]. It is well settled, however, that such intent may be inferred by the jury from the facts and circumstances of the case. *State v. Wendling*, 112 W.Va. 58, 164 S.E. 179 (1932). *See also, State v. Rood*, 11 Ariz.App. 102, 462 P.2d 399 (1969); *King v. State*, 256 Ark. 778, 510 S.W.2d 876 (1974); *State v. Hill*, 38 N.C. App. 75, 247 S.E.2d 295 (1978); *Commonwealth v. Jacobs*, 247 Pa.Super. 373, 372 A.2d 873 (1977). "Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case. The state of mind of an alleged offender may be shown by his acts and conduct." *Ridley v. Commonwealth*, 219 Va. 834, 252 S.E.2d 313 (1979). Similarly, in a case involving an intentional tort, Judge Kenna pointed out that intent is a state of mind which of necessity must be proved by deduction or inference from established extraneous facts. *Collins v. Dravo Contracting Co.*, 114 W.Va. 229, 171 S.E. 757 (1933).

■ The standard on review in this jurisdiction of the sufficiency of the evidence adduced at trial is found in Syl. pt. 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is

contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

So, the question in this case is whether the circumstantial evidence, when viewed in the light most favorable to the State, was manifestly inadequate. We do not think that it was. There were facts and circumstances from which the jury could have properly inferred that the defendant entered the dwelling house with the intent to commit larceny therein.

The record, when viewed in the light most favorable to the State, shows that the defendant met Rick Delancy at the "Smoke Hole" outside of Parkersburg High School. The defendant and Delancy smoked marihuana and then left the high school in the defendant's car. The car was low on gas and the defendant needed money to buy gasoline for his car so that he could continue to ride around and smoke marihuana with Delancy. The defendant and Delancy discussed stealing a coin collection at the home of Carolyn Eliot. They arrived at Ms. Eliot's home at approximately 1:30 p. m. on February 18, 1980. The defendant parked his car and checked the residence by knocking on the front door and ringing the door bell. When no one answered he went back to his car and got Delancy. They then went to the rear of the house where they gained entry by way of the back door. They met Ms. Eliot in the kitchen. The defendant and Delancy, upon seeing Ms. Eliot, turned and fled. Ms. Eliot positively identified the defendant. The defendant was stopped and arrested a few blocks from the Eliot home.

In *Commonwealth v. Morgan*, 265 Pa. Super. 225, 401 A.2d 1182 (1979), the victim of the robbery heard his doorbell ring. He went to the door and saw the defendant standing outside. The victim, however, did not answer the door. The defendant again rang the doorbell but the victim did not answer it or otherwise make his presence known to the defendant. The defendant then went to the back door of the victim's residence and attempted to break in. The victim called the police who arrested the defendant. In holding that there was sufficient evidence from which a jury could infer intent the court said: "[A]ppellant tried to determine whether the residence was occupied before attempting entry, which suggests that his intent was to commit theft.... Similarly, appellant acted ... early on a summer evening, when he could conclude from the lack of response to his ring that the occupants of the residence were away, which would allow him to pursue his task without interruption." 401 A.2d at 1187.

In *State v. Charest*, 109 N.H. 201, 247 A.2d 515 (1968), the victim came home to his apartment for lunch and found the defendants inside. The victim confronted the defendants and asked if he could help them. The defendants did not answer and left the apartment. The defendants ran and the victim gave chase. The victim gave up the chase and notified a police officer. The defendants were arrested shortly thereafter. The defendants attempted to explain their conduct as being the result of their employment as salesmen of costume jewelry. The Supreme Court of New Hampshire said:

> [O]n the evidence of the entry into a stranger's home by two men who could be found to be the defendants, their refusal to explain their presence, their flight, and the unlikely and unsupported explanation offered as to their alleged purpose, the Trial Court could properly find beyond a reasonable doubt that these defendants broke and entered LaPlante's home intending to commit larceny.

247 A.2d at 518.

In *Raymond v. State*, 55 Wis.2d 482, 198 N.W.2d 351 (1972), the victim was watching television in his home when he thought he heard a knock at his door. The victim started to answer the door but did not

when he saw the defendant going around the side of his home. He then heard a knock at the back door followed by a crash. The victim confronted the defendant in his flower room. The victim asked the defendant what he was doing and the defendant said, "Nothing." The defendant then struck the victim and ran from the house. The court found that the jury could have properly inferred intent to steal from the defendant's attempts to ascertain whether the premises were occupied, the nature of the structure involved, the defendant's flight and his failure to explain his presence.

In the case presently before us there were similar circumstances from which the jury could have inferred that the defendant had the requisite intent to commit a larceny within the dwelling house. There was a prior conversation involving criminal planning. The defendant took actions to discover whether the premises were occupied and then entered the dwelling house when he had mistakenly assured himself that it was unoccupied. The defendant fled upon his discovery and his explanations about his presence in the victim's home were, at best, unlikely. *See also, State v. Rood, supra; State v. Liston,* 95 Idaho 849, 521 P.2d 1028 (1974); *People v. Bryant,* 34 Ill.Dec. 950, 79 Ill.App.3d 501, 398 N.E.2d 941 (1979); *Hall v. State,* 490 S.W.2d 495 (Tenn.1973).

### III

 The defendant argues that certain remarks made by the prosecutor in his closing argument denied him a fair trial. The defendant primarily complains that the prosecutor's statement that if the jury believed the defendant's explanation—that he had gone to the house to smoke marihuana—then no one who breaks and enters a dwelling house could ever be found guilty of burglary if they offered a similar excuse. The defendant objected to the statement when it was made. The trial judge sustained the objection and instructed the jury to disregard the statement.

We held, in *State v. Brewster,* 164 W.Va. 173, 261 S.E.2d 77 (1979), at Syl. pt. 2: "A

judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney ... to a jury which do not clearly prejudice the accused or result in manifest injustice." *See also,* Syl. pt. 1, *State v. Dunn,* 162 W.Va. 63, 246 S.E.2d 245 (1978).

In light of the trial court's instructions to the jury in this case to disregard the comment, as well as the court's instructions to the jury in general, we cannot say that the prosecutor's comments clearly prejudiced the defendant or resulted in manifest injustice. The judgment of the Circuit Court of Wood County is, therefore, affirmed.

Affirmed.