# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

**October 23, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 16-1105** (Marshall County 16-F-51)

**Scott Butler,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Scott Butler, by counsel John R. Anderson, appeals the Circuit Court of Marshall County's October 26, 2016, order denying his post-trial motion for judgment of acquittal and sentencing him following his burglary and conspiracy to commit burglary convictions. Respondent State of West Virginia, by counsel Sarah B. Massey, filed a response. On appeal, petitioner contends that the circuit court erred in failing to grant his motion for judgment of acquittal because there was insufficient evidence to convict him of these crimes.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The evidence at petitioner's trial showed that, on April 18, 2016, petitioner, Selena Siburt, and two other individuals went grocery shopping. On the way home from the grocery store, Ms. Siburt indicated that she missed her son. Her son had been with his father, Zachary Henry, and the four passed by Mr. Henry's home on their way back from the grocery store. Ms. Siburt decided to go to Mr. Henry's home to see her son.

Sharry Hinerman, Mr. Henry's natural grandmother and adoptive mother, was outside of the home smoking a cigarette as the car in which petitioner, Ms. Siburt, and the others were riding drove past. Ms. Hinerman, along with Ms. Hinerman's husband and her granddaughter, were staying with Mr. Henry for the week. Ms. Siburt's son and Mr. Henry were not at the home.

Ms. Hinerman finished her cigarette around the same time that petitioner, Ms. Siburt, and the others turned back to Mr. Henry's home. Ms. Siburt and petitioner exited the car and headed toward Mr. Henry's home on foot, while the others remained in the car. Petitioner testified that he accompanied Ms. Siburt because he was concerned about her and the potential for an argument with Mr. Henry over their son. Ms. Hinerman entered the home and was attempting to shut the screen door when petitioner pulled it from her hand. After petitioner had taken hold of

1

the screen door, Ms. Hinerman attempted to shut the inside door, but petitioner and Ms. Siburt pushed into it. Although Ms. Hinerman testified that she attempted to shut the door "with all that [she] could," petitioner and Ms. Siburt pushed open the door with such force that they knocked Ms. Hinerman backwards and entered the home.

Once inside the home, Ms. Siburt began looking for her son. Petitioner remained by Ms. Hinerman and shouted to Ms. Siburt to look in various areas of the home for her son. Ms. Hinerman told Ms. Siburt and petitioner to leave and that Ms. Siburt's son was not in the home, but neither Ms. Siburt nor petitioner listened. As Ms. Siburt was searching the home, petitioner grew more "irrational" and "was hollering things and telling [Ms. Siburt] to go ahead and go there in the house to look for [her son]." Ms. Hinerman tossed her cell phone to her granddaughter and instructed her to call the police. Petitioner then struck Ms. Hinerman in the back of her head, causing her to "hit the floor." Ms. Hinerman continued to tell them to leave the home, and Ms. Siburt told petitioner to leave also. Ms. Hinerman believed that, at this point, Ms. Siburt "knew [petitioner] had done something wrong." After confirming for themselves that Ms. Siburt's son was not at the home, petitioner and Ms. Siburt left.

Not long after petitioner and Ms. Siburt left, the police arrived at Mr. Henry's home. Ms. Hinerman described the vehicle in which petitioner and Ms. Siburt arrived, and upon locating a vehicle matching that description, petitioner and Ms. Siburt were placed under arrest. Petitioner was indicted on three counts: burglary, conspiracy to commit burglary, and battery. At the conclusion of petitioner's trial, he was found guilty of the burglary and conspiracy to commit burglary charges. Petitioner moved for judgment of acquittal. The circuit court denied this motion and sentenced him to not less than one year nor more than fifteen years for the burglary conviction and not less than one year nor more than five years for the conspiracy to commit burglary conviction. The sentences were ordered to run consecutively. It is from this order that petitioner appeals.

On appeal, petitioner contends that the circuit court erred in failing to grant his motion for judgment of acquittal on the burglary and conspiracy charges because, to establish his guilt, the State was required to prove that petitioner intended to batter Ms. Hinerman before entering the home and that Ms. Siburt reached an agreement with him to batter Ms. Hinerman before entering the home. An individual is guilty of burglary if he or she "shall, in the daytime, break and enter, the dwelling house . . . of another, with intent to commit a crime therein[.]" W.Va. Code § 61-3-11(a). "In order for the State to prove a conspiracy under W.Va. Code, 61-10-31(1), it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy." Syl. Pt. 9, in part, *State v. Bouie*, 235 W.Va. 709, 776 S.E.2d 606 (2015) (internal quotations and citations omitted). Petitioner contends that the State argued and the jury was instructed that the crime petitioner purportedly intended to commit during the burglary was a battery and that the conspiracy to commit burglary charge similarly was predicated on the intent to commit a battery within the home. Petitioner argues that the evidence does not establish beyond a reasonable doubt that petitioner intended to commit a battery within the home because, at the time he struck Ms. Hinerman, Ms. Siburt knew that her son was not in the home. Further, after striking Ms. Hinerman, Ms. Siburt instructed petitioner to leave the home, "appear[ing] to feel that the battery was something that [petitioner] had done wrong[.]"

This Court applies a de novo standard of review to appeals from rulings on a motion for judgment of acquittal:

> The trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996). Regarding a claim that the evidence at trial was insufficient to convict, this Court has stated that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Further,

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part.

Viewing the evidence in the light most favorable to the State, we find that there was sufficient evidence from which the jury could find petitioner guilty of burglary and conspiracy to commit burglary. Petitioner only challenges the sufficiency of the evidence relative to the intent element. The intent element is an essential element of the crime of burglary; "[i]t is well settled, however, that such intent may be inferred by the jury from the facts and circumstances of the case." Syl. Pt. 3, in part, *State v. Ocheltree*, 170 W.Va. 68, 289 S.E.2d 742 (1982). "Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case. The state of mind of an alleged offender may be shown by his acts and conduct." *Id.* at 72, 289 S.E.2d at 746 (internal quotations and citation omitted). Here, petitioner accompanied Ms. Siburt into the home out of concern that things could turn

contentious between Ms. Siburt and Mr. Henry. In entering the home, petitioner pulled the screen door from Ms. Hinerman and began pushing on the front door with Ms. Siburt. The two pushed so forcefully into the home that Ms. Hinerman was knocked backwards. Any rational trier of fact could find that petitioner entered the home with the intent to do whatever was necessary to find Ms. Siburt's son, including harm Ms. Hinerman.

Similarly, we find sufficient evidence to support petitioner's conspiracy to commit burglary conviction.

> The agreement to commit an offense is the essential element of the crime of conspiracy – it is the conduct prohibited by the statute. The agreement may be inferred from the words and actions of the conspirators, or other circumstantial evidence, and the State is not required to show the formalities of an agreement.

*State v. Less*, 170 W.Va. 259, 265, 294 S.E.2d 62, 67 (1981) (citation omitted). Here, petitioner joined Ms. Siburt in walking to Mr. Henry's home to retrieve Ms. Siburt's son, when their other companions remained in the car. He joined her out of concern that she may need protection. As set forth above, the two opposed Ms. Hinerman's efforts to keep them from entering the home, pushed through Mr. Henry's door so forcefully that Ms. Hinerman was knocked backwards, and entered Mr. Henry's home. As also set forth above, the evidence supported the conclusion that they intended to retrieve Ms. Siburt's son by any means necessary. As such, the circuit court did not abuse its discretion in denying petitioner's motion for judgment of acquittal.

For the foregoing reasons, the circuit court's October 26, 2016, order denying his post-trial motion for judgment of acquittal and sentencing him is hereby affirmed.

Affirmed.

**ISSUED**:  October 23, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker